UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| JONATHAN KAPLAN<br>826 Lindenwood Circle West<br>Ormond Beach, FL 32174,<br>         Plaintiff,<br>v.<br><br>NATIONAL GEOSPATIAL-<br>INTELLIGENCE AGENCY<br>7500 GEOINT Drive<br>Springfield, VA 22150-7500,<br>         Defendant. | Civil Action No. 22-1604<br>ECF Case<br><br>**COMPLAINT** |

Plaintiff JONATHAN KAPLAN, by his undersigned attorneys, alleges:

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, for declaratory, injunctive, and other appropriate relief.

2. Plaintiff Jonathan Kaplan is a former official with the Central Intelligence Agency's Office of Inspector General ("CIA OIG"). After observing high-level officials within CIA OIG committing misconduct, Mr. Kaplan lawfully blew the whistle. He then suffered adverse personnel actions of various forms, causing him to file a whistleblower reprisal complaint. That complaint was investigated by the Office of Inspector General of Defendant National Geospatial-Intelligence Agency ("NGA OIG"), which concluded its investigation with a whistleblower reprisal report (the "Reprisal Report").

3. Mr. Kaplan obtained a version of the Reprisal Report through the related, ongoing FOIA case captioned *Kaplan, et al. v. Central Intelligence Agency, et al.*, No. 21-3306-TSC (D.D.C.). Though heavily redacted, the Reprisal Report raises serious concerns about the quality of NGA OIG's investigation.

1

4.  These concerns caused Mr. Kaplan to file the FOIA request at issue in this case. The request seeks the records cited in or underlying the Reprisal Report. The records are needed for Mr. Kaplan to exercise his right to challenge the investigation and its findings.

5.  In contravention of law, the NGA has failed to respond to Mr. Kaplan's request. Mr. Kaplan now seeks a declaration that the NGA has violated FOIA by failing to produce the requested records, an order enjoining the NGA to produce them immediately, and other appropriate relief.

## PARTIES

6.  Plaintiff Jonathan Kaplan is a former Special Agent who began working at the CIA in 1982. Mr. Kaplan was employed by the CIA OIG from 2005 to 2015. While at the CIA, Mr. Kaplan received a Certificate for Special Achievement and fourteen Exceptional Performance Awards. In addition, Mr. Kaplan took part in operation Top Gun, which resulted in the successful prosecution of U.S. Congressman Duke Cunningham for bribery, fraud, and tax evasion. In 2009, he won the Intelligence Community Inspector General's Investigation Award for his role in the investigation and prosecution of CIA Executive Director Kyle Foggo for fraud against the United States.

7.  Defendant National Geospatial-Intelligence Agency ("NGA") is a federal agency within the meaning of 5 U.S.C. § 552(f)(1). NGA possesses and controls the requested records and is responsible for fulfilling Plaintiff's FOIA request.

## JURISDICTION AND VENUE

8.  This Court has subject-matter jurisdiction over this action and personal jurisdiction over the Defendant pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).

9.  Venue is proper in this district under § 552(a)(4)(B).

## FACTS

*Mr. Kaplan's Lawful Whistleblowing*

10. On February 11, 2013, Mr. Kaplan submitted a letter of urgent concern under 50 U.S.C. § 3033, 50 U.S.C. § 3517, and 5 U.S.C. App. § 8H to individuals at the CIA's Office of Congressional Affairs for them to forward to several members of Congress, including the Chairmen, Vice Chairman, and ranking members of the Senate Select Committee on Intelligence and House Permanent Select Committee on Intelligence.

11. The unclassified letter alleged that David B. Buckley, while Inspector General of the CIA, threatened the objectivity and capability of the CIA OIG. In particular, the letter described the issuance of misleading reports describing the OIG's work to the Director of the CIA that improperly overrepresented the OIG's need for additional law enforcement powers, Buckley's victimization of senior investigators in violation of the Age Discrimination in Employment Act, and his hiring and appointment of "cronies" who contributed to a dysfunctional office environment and high personnel turnover.

12. In the summer of 2013, Mr. Kaplan was interviewed by staffers from both the Senate and House oversight committees to discuss his letter of urgent concern.

13. In or about May 2014, Mr. Kaplan submitted a second letter of urgent concern to the committees regarding irregular personnel actions and whistleblower reprisal, alleging that the CIA OIG had unlawfully retaliated against two of Mr. Kaplan's colleagues for engaging in protected whistleblowing actions.

14. In or about June 2014, Mr. Kaplan met with Paul J. Wogaman, Deputy Counsel for the Intelligence Community's OIG and reported possible investigative misconduct by the CIA OIG. Mr. Kaplan alleged that members of his office had engaged in evidence tampering and

withholding of evidence in an investigation and caused agency contractors to erroneously lose their security clearances and employment. Mr. Kaplan alleged that the misconduct was compounded by management targeting OIG staff and labelling other whistleblowers within the office as "insider threats."

15. In early August 2014, Mr. Kaplan met with staffers from the House Permanent Select Committee on Intelligence regarding the potential withholding of material evidence in an ongoing investigation. Additionally, Mr. Kaplan alleged that David Buckley, then CIA Inspector General, had been deceptive regarding representations made to the CIA Director in a Semi-Annual Report and other forms of communication. Finally, Mr. Kaplan alleged that management had told OIG officers to misrepresent themselves in violation of Executive Order 12333.

*The CIA's Reprisals and Mr. Kaplan's Reprisal Complaint*

16. In November 2014, an official in the CIA OIG told Mr. Kaplan he had been issued a Letter of Warning for violating OIG policy but did not say what policy or provide evidence of the violation. The letter threatened Mr. Kaplan's ability to retain his Top Secret security clearance. The same month, another official in the office told Mr. Kaplan he would not be interviewed for a vacant CIA position for which he had applied.

17. On December 2, 2014, Mr. Kaplan submitted a whistleblower reprisal complaint (the "Reprisal Complaint") to the Intelligence Committee Inspector General alleging that the CIA and its Inspector General at the time, Christopher Sharpley, retaliated against Mr. Kaplan for his submission of the letter of urgent concern by issuing the Letter of Warning without justification and declining to consider him for the vacancy.

18. The Intelligence Committee Inspector General directed the Reprisal Complaint to the NGA OIG for investigation, apparently to avoid the conflict of interest inherent in the CIA OIG investigating the complaint.

19. On November 14, 2019, Scott Borden, Special Agent in the NGA OIG, informed Mr. Kaplan that the NGA OIG had issued a report of investigation detailing its findings concerning Mr. Kaplan's allegations of reprisal—the Reprisal Report.

20. Mr. Borden explained orally to Mr. Kaplan that NGA OIG was unable to substantiate one element of Mr. Kaplan's retaliation claim: the CIA OIG's knowledge that Mr. Kaplan had made protected disclosures. According to Mr. Borden, the witnesses who would have been able to substantiate that element were the same staff alleged to have committed retaliation, namely David Buckley, Christopher Sharpley and Howard Cox, and they had refused to voluntarily participate in the NGA OIG's investigation. Messrs. Buckley, Sharpley and Cox were determined by the Department of Homeland Security's Office of Inspector General to have committed retaliation in a separate but related case.

21. On December 13, 2019, Mr. Kaplan appealed the Reprisal Report's findings to the Intelligence Community Inspector General out of an abundance of caution, even though the deadline for appeal under the Intelligence Community Inspector General's External Review Panel Procedures Pursuant to Presidential Policy Directive – 19 had not been triggered because Mr. Kaplan had not received the agency's final written disposition.

22. The Intelligence Community Inspector General did not adjudicate Mr. Kaplan's appeal at that time because Mr. Kaplan was not yet in possession of the Reprisal Report.

*The Reprisal Report*

23. After learning of the Reprisal Report, Mr. Kaplan sought to access it so that he could pursue his appeal of its findings with the Intelligence Community Inspector General and inform the public about the CIA OIG's retaliation against lawful whistleblowers.

24. Between December 3, 2019 and March 25, 2020, Mr. Kaplan filed FOIA requests for the Reprisal Report with the CIA, NGA, and Office of the Director of National Intelligence, in which the Intelligence Committee Inspector General is housed.

25. On December 17, 2021, after none of the agencies responded to the requests, Mr. Kaplan filed suit in this Court challenging the agencies' constructive denial of the requests. *See Kaplan et al. v. Central Intelligence Agency et al.*, No. 21-3306-TSC (D.D.C.).

26. The following month, on January 28, 2022, the NGA produced a heavily redacted copy of the Reprisal Report, including a cover memo transmitting the Reprisal Report to the CIA Inspector General. A true and correct copy of the Reprisal Report is attached as Exhibit A.

27. The Reprisal Report found that Mr. Kaplan engaged in protected disclosures and suffered adverse personnel action but did not find sufficient evidence that those he accused of misconduct knew of the disclosures at the time of the adverse personnel actions.

28. There is no indication in the unredacted portions of the Reprisal Report that the NGA OIG reviewed any correspondence or other documents written by or sent to any of the individuals Mr. Kaplan accused of misconduct, review of which could have provided evidence to substantiate the missing element of Mr. Kaplan's Reprisal Complaint.

29. There is also no indication in the unredacted portions of the Reprisal Report that the NGA OIG interviewed anyone other than Mr. Kaplan and those involved in the alleged

retaliation, who, for obvious reasons, did not admit to knowing about Mr. Kaplan's protected disclosures at the time of the adverse personnel actions.

30. After receiving a copy of the Reprisal Report, Mr. Kaplan submitted another appeal of its findings to the Intelligence Community Inspector General on March 9, 2022. This appeal is pending.

*The FOIA Request at Issue in this Case*

31. On March 23, 2022, Mr. Kaplan, via counsel, submitted a second FOIA request to the NGA (the "Request") seeking copies of (1) all records referenced by, cited in, or attached to either the Reprisal Report or the cover memo; (2) all records reviewed by the NGA OIG in its investigation of the Reprisal Complaint; and (3) all recordings, transcriptions, summaries, or notes of all witness interviews conducted by the NGA OIG in its investigation of the Reprisal Complaint. A true and correct copy of the Request is attached as Exhibit B. A true and correct copy of the email transmitting the Request to the NGA is attached as Exhibit C.

32. Mr. Kaplan submitted the Request to supplement his appeal to the Intelligence Community Inspector General and to inform the public about the CIA OIG's retaliation against lawful whistleblowers. The requested records will shed light on departmental practices that enable retaliation against whistleblowers to go unchecked.

33. The NGA has not responded to the Request in the more than two months since it has been pending.

34. Mr. Kaplan has exhausted his administrative remedies.

## FIRST CLAIM

### Violation of FOIA for failure to respond to Plaintiff's Request

35. Plaintiff repeats, re-alleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

36. Defendant's failure to timely provide substantive responses to the Request violates FOIA, 5 U.S.C. § 552(a)(6)(A), and Defendant's implementing regulations.

## SECOND CLAIM

### Violation of FOIA for failure to make records available

37. Plaintiff repeats, re-alleges, and incorporates the allegations in the foregoing paragraphs as though fully set forth herein.

38. Defendant's failure to make available the records sought by the Request violates the Freedom of Information Act, 5 U.S.C. § 552(a)(3)(A), and Defendant's implementing regulations.

## RELIEF REQUESTED

**WHEREFORE,** Plaintiff respectfully requests this Court to:

A. Declare that the records sought in Plaintiff's FOIA request are public records under 5 U.S.C. § 552 and must be disclosed;

B. Order Defendant to immediately conduct a thorough search for the records responsive to Plaintiff's request;

C. Order Defendant to immediately disclose, in their entirety, all records responsive to Plaintiff's request that are not specifically exempt from disclosure under FOIA;

D. Enjoin Defendant from charging Plaintiff for the search, review, or duplication fees for processing their request;

E. Award Plaintiff the costs of this proceeding, including reasonable attorneys' fees; and

F. Grant such other and further relief as the Court deems just and proper.

Dated: June 7, 2022

                                Respectfully submitted,

                                MEDIA FREEDOM AND INFORMATION
                                ACCESS CLINIC

                                By: */s/ David A. Schulz*
                                David A. Schulz (Bar No. 459197)
                                MEDIA FREEDOM AND INFORMATION ACCESS CLINIC
                                ABRAMS INSTITUTE
                                YALE LAW SCHOOL
                                1675 Broadway, 19th Floor
                                New York, NY 10019
                                Tel: (212) 850-6103
                                schulzd@ballardspahr.com

                                *Counsel for Plaintiff*